COLLINS WHOLESALE DISTRIBUTING COMPANY, Plaintiff,

v.

E. & J. GALLO WINERY, Defendant.

No. C–C–86–475.

United States District Court,
W.D. North Carolina,
Charlotte Division.

May 20, 1987.

---

T. LaFontine Odom, Weinstein & Sturges, P.A., Charlotte, N.C., for plaintiff.

E. Osborne Ayscue, Jr., Smith, Helms, Mulliss & Moore, Charlotte, N.C., for defendant.

## MEMORNDUM OF DECISION AND ORDER

McMILLAN, District Judge.

The plaintiff Collins Wholesale Distributing Company ("Collins") filed an action against defendant E. & J. Gallo Winery ("Gallo") in the Mecklenburg County Superior Court. Collins alleges in Count I of its complaint that Gallo violated the North Carolina Wine Distribution Agreements Act, and alleges in Count II of its complaint that Gallo also breached a common law duty codified by this act. Collins also alleges malicious and tortious interference with contract; breach of duty of good faith and commercial reasonableness; violation of the North Carolina Unfair Trade Practices Act; and willful, wanton, malicious, and intentional conduct, entitling Collins to punitive damages. Gallo removed the action to this court, and it has filed a motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss Count I and Count II of Collins' complaint.

A court considering a motion to dismiss for failure to state a claim, must take as true the material facts alleged in the plaintiff's complaint. *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740, 96 S.Ct. 1848, 1850, 48 L.Ed.2d 338 (1976).

Collins alleges that it was incorporated for the purpose of acquiring a beer and wine wholesale business; that in January of 1986, Collins entered an agreement with Southern Distribution Company, Inc., ("Southern"), a franchisee of Gallo in the area of Fayetteville, North Carolina, for the purchase by Collins of the wine and beer wholesale business of Southern; that the contract of Collins to purchase Southern was conditional upon Gallo approving Collins as a franchisee of Gallo; that Collins sought the approval of Gallo to the transfer of Southern's franchise to Collins; but that Gallo unreasonably withheld its consent to the transfer and prevented the transfer from taking place.

Collins asserts that Gallo, by unreasonably withholding its consent to the transfer of Southern's franchise to Collins, violated N.C.G.S. 18B–1200, et seq., the North Carolina Wine Distribution Agreements Act.

N.C.G.S. 18B–1206(a) reads as follows:

No winery may unreasonably withhold or delay consent to any transfer of the wholesaler's business or transfer of the stock or other interest in the wholesaleship whenever the wholesaler to be substituted meets the material and reasonable qualifications and standards required of the winery's wholesalers.

N.C.G.S. 18B–1207(a) permits a "wholesaler," aggrieved under this section, to maintain a suit for damages and injunctive relief against the winery.

N.C.G.S. 18B–1201 reads in pertinent part as follows:

As used in this Article, *unless the context requires otherwise ....* "Wine wholesaler" means any holder of a wine wholesaler permit, wine importer permit, or bottler permit issued under the authority of this Chapter.

Subchapter 2, section 102, of the regulations of the North Carolina Alcoholic Beverage Control Commission, issued under the authority of N.C.G.S. Chapter 18B, states:

[E]very applicant for a permit to sell malt beverages or wine at wholesale shall submit with the permit application a distribution agreement specifying the brands authorized to be sold by the wholesaler and the specific territory in which the product may be sold.

Collins presently does not have a wine wholesaler permit, and Collins cannot obtain a permit without a franchise agreement.

Gallo asserts that without a wine wholesaler permit, Collins is not a "wholesaler" under the North Carolina Wine Distribution Agreements Act. Therefore, even if Gallo wrongfully withheld its consent to the transfer of Southern's franchise to Col-

lins, Collins has no remedy under N.C.G.S. 18B–1207.

■ This court disagrees. The definition of "wine wholesaler" in N.C.G.S. 18B–1201 is not an exclusive definition but is to be used, *"unless the context requires otherwise."*

N.C.G.S. 18B–1206, governing the transfer of businesses, protects the transferor wholesaler as well as *"the wholesaler to be substituted."*

The preamble to the North Carolina Wine Distribution Agreements Act states, "This Article shall be liberally construed and applied to promote its underlying purposes and policies.... The underlying purposes of the Article are to promote the compelling interest of the public in fair business relations between wine wholesalers and wineries ... [and] to govern *all* wine wholesalerships, including any renewals or amendments" (emphasis added).

To construe the term "wholesaler" as the defendant suggests would include within the scope of "wholesaler to be substituted," a wholesaler who already had a franchise, but would exclude a wholesaler who wished to enter the business but had not yet obtained a permit. Such a construction would be contrary to the legislative intent to "govern *all* wine wholesalerships" (emphasis added).

Such a limiting construction also would nullify the provisions of the statute which require wineries to "make reasonable efforts to *establish* agreements with wholesalers who are females and members of minority groups." Section 18B–1202(4) (emphasis added). A minority or female "wholesaler" seeking to establish a franchise may not yet have a wine wholesaler permit, and under the interpretation of the defendant, would have no standing under the act to sue a winery which discriminated against her.

The intent of the legislature is what the interpretation of a statute is all about. *Jolly v. Wright,* 300 N.C. 83, 86, 265 S.E.2d 135 (1980); *Mazda Motors v. Southwestern Motors,* 296 N.C. 357, 361, 250 S.E.2d 250 (1979). In ascertaining the intent of the legislature, "words and phrases of a statute must be interpreted contextually, in a manner which harmonizes with the other provisions of the statute and which gives effect to the reason and purpose of the statute." *Burgess v. Brewing Co.,* 298 N.C. 520, 524, 259 S.E.2d 248 (1979), citing *In re Hardy,* 294 N.C. 90, 240 S.E.2d 367 (1978). "A construction which operates to defeat or impair the object of the statute must be avoided if that can reasonably be done without violence to the legislative language." *Burgess v. Brewing Co., Id.,* quoting *State v. Hart,* 287 N.C. 76, 213 S.E.2d 291 (1975).

Ordinarily, when the legislature defines a word in a statute, the court must adhere to that definition. *Vogel v. Supply Co.,* 277 N.C. 119, 130, 177 S.E.2d 273 (1970). However, in this case the statutory definition of "wine wholesaler" states that it is to be applied *"unless the context requires otherwise." Vogel v. Supply Co., Id.,* and *In re Clayton–Marcus Co.,* 286 N.C. 215, 219, 210 S.E.2d 199 (1974), which the defendant cites in support of its contention that the statutory definition should be applied strictly, are not in point. *Vogel* involved the interpretation of a criminal statute, *Clayton–Marcus* the interpretation of a tax statute. As these cases themselves make clear, a statute levying a tax upon a taxpayer, or a statute imposing a criminal penalty upon a citizen, is to be strictly construed against the state. However, this case involves a dispute between *private* litigants.

■ Nor is it clear to the court that statutes which protect franchisees, such as the North Carolina Wine Distribution Agreements Act, are "in derogation of the common law right of freedom of contract," and ought for that reason to be construed strictly. *Cf.* the leading case of *Shell Oil Co. v. Marinello,* 63 N.J. 402, 409, 307 A.2d 598 (1973), *cert. denied,* 415 U.S. 920, 94 S.Ct. 1421, 39 L.Ed.2d 475 (1974); E. Gellhorn, "Limitations on Contract Termination Rights—Franchise Cancellations," 1967 Duke L.J. 465, 468.

Due consideration to the entire text of the North Carolina Wine Distribution

Agreements Act, leads this court to conclude that the plaintiff Collins is a "wholesaler" under N.C.G.S. 18B–1206(a), and is entitled to the judicial protections of 18B–1207(a).

Accordingly, the motion of the defendant to dismiss the claim of the plaintiff arising under the North Carolina Wine Distribution Agreements Act is DENIED.

The motion of the defendant to dismiss count II of the plaintiff's complaint, alleging a breach by the defendant of a common law duty to the plaintiff, also is DENIED.