BROSKY, Judge.
 

 These appeals are from the final judgment entered following resolution of Alfred M. Lutheran Distributors Inc.’s action against Latrobe Brewing Company.
 
 [1]
 

 
 *394
 
 Before addressing the allegations of error raised by the parties it is necessary to recount the relevant facts giving rise to these appeals. A.P. Weilersbacher, Inc. (Weilersbacher) was a distributor of malt and brewed as well as non-alcoholic beverages in Allegheny County. In 1988, Weilersbacher had exclusive distribution agreements with Latrobe Brewing Company (Latrobe)
 
 [2]
 
 and other manufacturers, including the Heilman Brewing Company (Heilman) and Straub Brewing Company (Straub). Desiring to retire from the malt and brewed beverage distribution business, Weilersbacher decided to sell its exclusive distribution rights to another distributor. Consequently, Weilersbacher entered into an agreement in March of 1988 with appellant/cross-appellee, Alfred M. Lutheran Distributors, Inc. (Lutheran). Pursuant to the agreement, Lutheran was to acquire the exclusive distribution rights of Latrobe, Heilman and Straub, subject to Lutheran obtaining the approval of these manufacturers. Lutheran subsequently met with representatives of Latrobe/Labatt, supplied them with pertinent information regarding the proposed transaction and requested approval of the transfer.
 

 Latrobe/Labatt preferred that Weilersbacher transfer its distribution rights to Brandt Distributors, Inc. (Brandt) and suggested that Weilersbacher meet with Brandt. Accordingly, Weilersbacher began negotiating with Brandt for the sale of the same products previously offered to Lutheran. As a result, Brandt submitted a request for approval of the transfer of the Latrobe/Labatt rights while Lutheran’s request was pending. Although Lutheran initially secured the approval of Heilman and Straub, Latrobe/Labatt rejected Lutheran’s ap
 
 *395
 
 plication. Following Latrobe/Labatt’s decision, Heilman subsequently revoked its approval.
 
 [3]
 
 Weilersbacher’s distribution rights were thereafter purchased by Brandt.
 

 Lutheran commenced this action by writ of summons against Weilersbacher, Latrobe and Labatt in June, 1988. In September of 1988, Lutheran settled with Weilersbacher in exchange for transfer of the Straub distribution rights and payment of $125,000.00. The case thus proceeded to trial against Latrobe and Labatt following which the jury returned a verdict in favor of Lutheran in the sum of $2,000,000.00.
 
 [4]
 
 Timely post-trial motions were filed by both parties. With the exception of Latrobe’s motion for judgment notwithstanding the verdict, which was granted, the remaining motions were denied by the trial court. Judgment was duly entered in favor of Latrobe and both Lutheran and Latrobe respectively initiated their timely appeal and cross-appeal therefrom.
 

 Appellant-Lutheran presents the following issue for review: (1) whether the trial court erred in granting judgment notwithstanding the verdict in favor of Latrobe by concluding that a prospective purchaser of wholesale malt or brewed beverage distribution rights has no standing to and cannot maintain a private statutory cause of action against a malt or brewed beverage manufacturer under the Pennsylvania Liquor Code, 47 P.S. § 4-492(20)(i). In addition, cross-appellant-Latrobe contends that the trial court erred in: (1) permitting Lutheran to introduce evidence of damages relating to the loss of the Heilman distribution rights; (2) refusing to strike the testimony of appellant’s damages expert because it was speculative and lacking in foundation; and (3) allowing the case to be tried by a jury of ten individuals, where the parties previously stipulated to a jury of no less than eleven. For the reasons set forth below, we affirm.
 

 
 *396
 
 Appellant challenges the trial court’s denial of their motion for judgment notwithstanding the verdict (judgment n.o.v.).
 

 In reviewing a motion for judgment n.o.v., the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor. Moreover, a judgment n.o.v. should only be entered in a clear case and any doubts must be resolved in favor of the verdict winner. Further, a judge’s appraisement of the evidence is not to be based on how he would have voted had he been a member of the jury, but on the facts as they come through the sieve of the jury’s deliberations. There are two bases upon which a judgment n.o.v. can be entered: one, the movant is entitled to judgment as a matter of law, and/or two, the evidence .was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, a court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.
 

 Moure v. Raeuchle,
 
 529 Pa. 394, 402-403, 604 A.2d 1003, 1007 (1992) (citations and quotation marks omitted). We will evaluate appellant’s arguments and the decision of the lower court in accordance with these principles.
 

 Appellant contends that the trial court erred in concluding that appellant lacked standing and could not maintain a private statutory cause of action pursuant to 47 P.S. § 4-492(20)(i) of the Pennsylvania Liquor Code. Because the question of whether a private statutory cause of action exists under § 4-492(20) has not been previously decided by the Pennsylvania courts, we necessarily begin our discussion with an examination of the pertinent statute, which is set forth as follows:
 

 
 *397
 
 It shall be unlawful—
 

 Interference with transfer of license, business or franchise
 

 (20)(i) For any manufacturer to interfere with or prevent any distributor or importing distributor from selling or transferring his license, business or franchise, whether before or after notice of modification, cancellation, termination, rescission or nonrenewal has been given, provided the proposed purchaser of the business of the distributor or importing distributor meets the material qualifications and standards required of the manufacturers[,] other distributors or importing distributors....
 

 47 P.S. § 4 — 492(20)(i)-
 
 [5]
 

 In construing the above statute, we must ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S.A. § 1921(a). We are guided by the following presumptions in ascertaining legislative intent:
 

 (1) That the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.
 

 (2) That the General Assembly intends the entire statute to be effective and certain.
 

 (3) That the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth.
 

 (4) That when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language.
 

 (5) That the General Assembly intends to favor the public interest as against the private interest.
 

 1 Pa.C.S.A. § 1922. In addition, we are not free to disregard the letter of a statute under the pretext of pursuing its spirit when its words are clear and free from all ambiguity. 1 Pa.C.S.A. § 1921(b). Moreover, statutes or parts of statutes
 
 *398
 
 which are in
 
 pari materia, i.e.,
 
 statutes or parts thereof which relate to the same persons or things or to the same class of persons or things, must be construed together, insofar as possible, as one statute.
 

 Application of the above principles reveals that § 4-492(20) neither expressly grants nor denies any person the right to initiate a private statutory cause of action. Because the statute is silent on this subject, we must ascertain whether the General Assembly implicitly intended to provide for a private statutory cause of action.
 
 [6]
 

 
 *399
 
 In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff one of the class for whose
 
 especial
 
 benefit the statute was enacted, that is, does the statute create a ... right in favor of the plaintiff? Second, is there an indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent -with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?
 

 Cort v. Ask,
 
 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26, 36 (1975) (citations and quotation marks omitted; emphasis in original).
 
 See also Everett v. Harron,
 
 380 Pa. 123, 127-128, 110 A.2d 383, 385-386 (1955) (in which the court relied upon similar factors in determining that the plaintiffs had a right to proceed against the defendants in a civil action to recover damages based on the defendants’ violation of a criminal statute). Each of the above factors is not entitled to equal weight, however, and the central focus remains whether the legislature intended to create, either expressly or by implication, a private cause of action,
 
 Touche Ross & Co. v. Redington,
 
 442 U.S. 560, 575, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82, 96 (1979). Consideration of these elements persuades us that the General Assembly did not implicitly intend to create a private statutory cause of action under § 4-492(20).
 

 We must first determine whether the General Assembly has evinced an intent, either explicit or implicit, to create or deny a private remedy. Standing alone, section 4-492(20) is nothing more than a bare criminal statute which makes it unlawful for manufacturers of malt or brewed beverages from interfering with or preventing a distributor or importing dis
 
 *400
 
 tributor from transferring his license. Moreover, nothing in the language of the statute expressly provides for a private cause of action. Consequently, this provision cannot be relied upon as creating a civil cause of action, absent some other indicia of legislative intent.
 
 See Cort v. Ash,
 
 422 U.S. at 79-80, 95 S.Ct. at 2088-2089, 45 L.Ed.2d at 37 (bare criminal statute which does not indicate that civil enforcement of any kind was available to anyone did not create a civil cause of action) and
 
 Everett v. Harron,
 
 380 Pa. at 127, 110 A.2d at 385-386 (persons have a right to pursue a civil action to enforce rights afforded by a criminal statute where there was evidence that such relief was contemplated by the legislature). We must accordingly examine the other provisions of the Liquor Code to determine whether the General Assembly has evinced an intent to allow a civil action.
 

 The Liquor Code is an act which is designed to comprehensively regulate the manufacture of, and all other related transactions involving, liquor, alcohol and malt or brewed beverages within the Commonwealth. 47 P.S. § 1-104(a), (c) and (d) (discussing the purposes and interpretation of the Liquor Code).
 
 See also Tony Savatt, Inc. v. Latrobe Brewing Co.,
 
 400 Pa.Super. 296, 305, 583 A.2d 796, 800 (1990),
 
 allocatur denied,
 
 527 Pa. 668, 593 A.2d 843,
 
 cert. denied,
 
 502 U.S. 982, 112 S.Ct. 586, 116 L.Ed.2d 611 (1991) (Liquor Code is to be liberally construed to effectuate its purpose of protecting the public health, welfare, peace and morals; it is not a generic economic regulation, but is an exercise of the police power for the protection of the public welfare). To effectuate the purposes of the Liquor Code, the General Assembly has provided for the creation of an independent administrative board, known as the Pennsylvania Liquor Control Board (PLCB). Among other things, the PLCB is specifically empowered: to control the manufacture, possession, sale, consumption, importation, use, storage, transportation and delivery of liquor, alcohol, malt or brewed beverages; to grant, issue, suspend and revoke all licenses and permits authorized by the Liquor Code; and to make such regulations as it may deem necessary for the efficient administration of the act. 47 P.S. § 2-207(b),
 
 *401
 
 (d) and (i). While the PLCB is charged with fulfilling these duties, the General Assembly has primarily delegated the responsibility of enforcing the provisions of the Liquor Code to the Enforcement Bureau,
 
 ie.,
 
 the Bureau of Liquor Control Enforcement of the Pennsylvania State Police.
 
 See
 
 47 P.S. § 1-102 (defining enforcement bureau); § 4-471(a) and § 5-514 (providing that the enforcement bureau may issue citations to licensees upon learning of any violation of the Liquor Code, PLCB regulations, the laws of this Commonwealth relating to liquor, alcohol or malt or brewed beverages, or the laws of the Federal Government relating to the payment of taxes on liquor, alcohol or malt or brewed beverages). In the event that a violation is established, the General Assembly has prescribed the penalties which may be imposed. These include the payment of fines, imprisonment, the suspension or revocation of licenses, forfeiture and the inability to use a particular location for the sale, transportation, manufacture, storage or possession of alcoholic beverages. 47 P.S. § 4-494 (defining the penalties which may be imposed for a violation of Article IV of the Liquor Code); § 5-519 (defining the penalties which may be imposed for a violation of Article V of the Liquor Code); § 6-601 (permitting certain property to be forfeited); § 6-611 (granting the courts the power to enjoin a nuisance and preclude an individual from utilizing premises for alcohol-related purposes).
 

 However, there are limited circumstances pursuant to which a civil action can be instituted under the Liquor Code. Under § 4-431(d), a distributor or importing distributor may enjoin the modification, rescission, cancellation or termination of a franchise or distribution agreement between a manufacturer and such distributor. 47 P.S. § 4-431(d)(4). Jurisdiction over such an action is vested in the court of common pleas of the county in which the licensed premises of the distributor/importing distributor are located.
 
 Id.
 

 The second type of proceeding permitted by the Liquor Code is a forfeiture action which allows illegally possessed or manufactured property, or property used in the illegal manufacture or transportation thereof, to be forfeited to the Com
 
 *402
 
 monwealth.
 
 See 47
 
 P.S. § 6-601 (defining the type of matters deemed to be contraband) and § 6-602 (describing the procedure for forfeiture proceedings). Although any officer or citizen may file a forfeiture petition in the court of common pleas,- the action is brought in the name of the Commonwealth. 47 P.S. § 6-602(a). In the event that the court condemns the property and orders it forfeited, it is to be destroyed or delivered to a hospital or to the enforcement bureau. 47 P.S. § 6-603.
 

 The third instance in which a civil action may be brought relates to the abatement of a common nuisance. 47 P.S. § 6-611. Pursuant to this statute, the Attorney General, the district attorney of the proper county, or a person who resides or has a place of business within five hundred feet of the location of an alleged nuisance may bring an action in equity in any court having jurisdiction to hear and determine equity cases in which the offense occurs. 47 P.S. § 6 — 611(b). In the event that the court issues a decree ordering the nuisance to be abated, the defendant can be directed to pay all fines, costs and damages which may be assessed. 47 P.S. § 6-611(c).
 

 Other than these three extremely limited types of actions, none of which are applicable here, there is absolutely no indication, either explicit or implicit, that the General Assembly intended or otherwise contemplated that an aggrieved party may institute a private statutory action either to enforce the provisions of the Liquor Code or to recover damages. Our conclusion is further supported by the fact that the General Assembly has aptly demonstrated its ability to create a private statutory cause of action whenever it has chosen to do so.
 
 See, e.g.,
 
 35 P.S. § 691.601(c) (allowing any person having an interest which is or may be adversely affected to commence a civil action against any person who is in violation of any provision of the Clean Streams Law or any rule, regulation, order or permit issued pursuant thereto); 52 P.S. § 30.63(a) (allowing any person having an interest which is or may be adversely affected to commence a civil action against any person who is alleged to be in violation of the Coal Refuse Disposal Control Act or any rule, regulation, order or permit
 
 *403
 
 issued pursuant thereto); 52 P.S. § 1396.18c(a) (allowing any person having an interest which is or may be adversely affected to commence a civil action against any person who is in violation of any provision of the Surface Mining Conservation Reclamation Act or any rule, regulation, order or permit issued pursuant thereto); 52 P.S. § 1406.13(b) (permitting any person having an interest which is or may be adversely affected to commence a civil action against any person who is in violation of the Bituminous Mine Subsidence and Land Conservation Act or any rule, regulation, order or permit issued pursuant thereto); 63 P.S. § 818.20(a) (granting any person who is or may be injured by a violation of a provision of the Board of Vehicles Act or any party to a franchise who is so injured the right to bring an action for damages and equitable relief in any court of competent jurisdiction); 68 P.S. § 398.15 (indicating that an individual is not prohibited or otherwise restricted from initiating a private cause of action pursuant to any right or remedy conferred by the Mobile Home Park Rights Act); 73 P.S. § 201-9.2(a) (providing that any person who purchases or leases consumer goods or services and suffers any loss of money or property as a result of the use or employment by any person of a method, act or practice declared unlawful under the Unfair Trade Practices and Consumer Protection Law may bring a private action to recover damages). As made plain by these other statutes, the General Assembly clearly knows how to draft legislation so as to grant an individual the right to maintain a private statutory cause of action. The fact that a similar provision has been omitted from the Liquor Code strongly suggests that the General Assembly has not seen fit to allow private statutory causes of action to be brought thereunder, other than in the three limited instances previously discussed.
 

 We must next consider whether appellant falls within the class of those for whose especial benefit § 4-492(20) was enacted. With respect to this element, the statute renders it unlawful for manufacturers of malt or brewed beverages to interfere with or prevent any distributor or importing distributor from transferring his license, business or franchise to a
 
 *404
 
 prospective purchaser who meets the material qualifications and standards required by the manufacturer. 47 P.S. § 4-492(20)(i),
 
 supra.
 
 The statute thus indicates that the General Assembly was concerned with protecting the rights of the distributor or importing distributor vis-a-vis the manufacturer rather than the rights of the prospective purchaser or other third-party.
 
 [7]
 
 Section 4-492(20) also creates no rights in favor of a prospective purchaser of a license, business or franchise. To the extent that this provision can be construed as creating any rights at all, it only accords the distributor or importing distributor the right to transfer his license, business or franchise to a qualified purchaser without unlawful interference or prevention by the manufacturer.
 

 It may be argued that because a qualified prospective purchaser of a license, business or franchise benefits from the statute through his ability to consummate the transaction without unlawful interference by the manufacturer, he must necessarily be deemed to fall within the class of individuals for
 
 *405
 
 whom the statute was enacted. As previously noted, the predominant objective of the statute is to prohibit a manufacturer from interfering with or precluding a distributor or importing distributor from transferring his license, business or franchise to a qualified purchaser. The fact that the statute bestows an incidental benefit upon a prospective purchaser does not alter the fundamental purpose for which the statute was enacted, nor does it otherwise transform the purchaser into a member of the class to whom the statute was designed to apply.
 

 The third factor requires us to ascertain whether it is consistent with the underlying purpose of the legislative scheme to imply a private remedy in favor of appellant. As previously discussed, the General Assembly was concerned with regulating an existing relationship between the distributor or importing distributor and the manufacturer rather than any relationship between these entities and a prospective purchaser or transferee. Notwithstanding this concern, the legislature has only granted a distributor or importing distributor the limited statutory right to seek injunctive relief in the courts and has charged the PLCB and the enforcement bureau with the responsibility of investigating all other violations of the Liquor Code and enforcing its provisions. To extend the rights and remedies granted by the statute, when the General Assembly has not chosen to do so, would disrupt the balance which the General Assembly has sought to create between the rights and responsibilities which manufacturers, and distributors or importing distributors owe to each other. Consideration of this factor thus does not persuade us that a private statutory cause of action should be implied under § 4-492(20)(i).
 
 [8]
 

 
 *406
 
 Although analysis of § 4-492(20) as well as other portions of the Liquor Code discloses no evidence of legislative intent to create a private statutory cause of action, appellant contends that Pennsylvania decisional law, as well as the law of other jurisdictions, dictates a contrary result. Examination of these authorities is therefore required inasmuch as the instant case is one of first impression. We begin with an analysis of current Pennsylvania law. The existing Pennsylvania authorities fall into two categories: (1) cases arising under § 4-431(d) and § 4-492(19) between manufacturers and distributors or importing distributors;
 
 [9]
 
 and (2) cases involving violations of § 4-493 which give rise to a common law tort action.
 
 [10]
 
 As the facts of this case do not fall within either of these two groups, we find the decisions arising thereunder to be inapposite.
 

 With respect to those cases falling within the first class, we previously indicated that the Liquor Code specifically grants a distributor or importing distributor the right to - enjoin a manufacturer from terminating, modifying, cancelling, rescinding or refusing to renew a distribution agreement. 47 P.S.
 
 *407
 
 § 4-431(d)(4). To bring action pursuant to this statute, a distributor/importing distributor must have an existing written agreement with the manufacturer. 47 P.S. § 4-431(d)(l). Moreover, where a manufacturer has designated a distributor as a primary distributor under § 4-431(d)(5), the agreement between the parties can only be altered or terminated for good cause, as defined in § 4 — 431(d)(1). 47 P.S. § 4-431(d)(l). Before a manufacturer can terminate its agreement with a primary distributor or importing distributor, however, the manufacturer must give notice of any deficiencies or the reason for the termination, which the distributor then has the opportunity to rectify or challenge. 47 P.S. § 4-492(19). None of these provisions are relevant in this instance because appellant was not attempting to enjoin Latrobe from terminating or modifying an existing distribution agreement without good cause or compliance with the notice requirements. The cases which apply and interpret § 4-431 and § 4-492(19) therefore are not dispositive of the question of whether § 4-492(20) gives rise to a private statutory cause of action.
 

 We reach a similar conclusion regarding the second group of decisions. Contrary to appellant’s assessment, these types of cases simply do not hold that § 4-493 gives rise to a statutory civil cause of action. Rather, these authorities stand for the ordinary proposition that the statute imposes a duty upon the defendant-licensees, the violation of which is negligence
 
 per se
 
 and gives rise to an action in tort.
 
 Matthews v. Konieczny,
 
 515 Pa. 106, 113, 527 A.2d 508, 512 (1987);
 
 Majors v. Brodhead Hotel,
 
 416 Pa. 265, 268, 205 A.2d 873, 875 (1965);
 
 Jardine v. Upper Darby Lodge No. 1973, Inc.,
 
 413 Pa. 626, 632, 198 A.2d 550, 553 (1964);
 
 Thomas v. Duquesne Light Co.,
 
 376 Pa.Super. 1, 10, 545 A.2d 289, 293 (1988),
 
 affirmed,
 
 528 Pa. 113, 595 A.2d 56 (1991);
 
 Connelly v. Ziegler,
 
 251 Pa.Super. 521, 524, 380 A.2d 902, 903 (1977).
 

 Unlike these decisions, appellant has not asserted a common-law tort action against Latrobe premised upon the duty imposed by § 4-492(20). Appellant instead claims that § 4-492(20) creates a private statutory cause of action which is separate and distinct from any tort action which has been
 
 *408
 
 recognized under the common law. The distinction between these two types of actions is illustrated by the following comments from our Supreme Court. In discussing a violation of § 4-493(1) of the Liquor Code by a non-licensee, Justice Manderino recognized the differences between a statutory civil cause of action and one arising under the common law, and stated:
 

 The trial court erred in reasoning that a trespass action in negligence must state a cause of action under a statute. The courts may — or may not — look to a statute for a controlling or guiding standard to be applied in a negligence action.... Section 493(1) of the Liquor Code does provide a' standard of conduct for persons such as the [defendants] in this case.... The question remains whether the standard should be adopted as the standard of due care in this case.... A statute providing for criminal liability but not civil liability leaves a court free to accept or not accept the legislatively established standard of conduct for a tort action. The decision to accept the standard is purely a judicial one, for the court to make. When the court does adopt the legislative standard, it is acting to further the general purpose which it finds in the legislation.
 

 [I]n
 
 Jardine v. Upper Darby Lodge No. 1973, Inc.,
 
 413 Pa. 626, 198 A.2d 550 (1964), this court specifically held that one of the purposes of section 493(1) of the Liquor Code was to protect the interest of a third party injured as the result of the conduct of an intoxicated person. In light of the general purpose of the statutory enactment, the legislative standard of conduct is the conduct required of a reasonable man in a negligence action. Violation of this statute is negligent conduct in itself.
 
 Section 193(1) of the Liquor Code does not create the cause of action in this case. The ordinary principles of negligence do that.
 
 By section 493(1) of the Liquor Code[,] the legislature has established a standard of reasonable conduct from which no one can deviate without criminal liability. That same standard should apply in negligence.
 

 
 *409
 

 Manning v. Andy,
 
 454 Pa. 237, 243-249, 310 A.2d 75, 78-81 (1973) (citations and emphasis in original omitted; other emphasis added) (dissenting opinion by Manderino, J., joined by Roberts, J.).
 
 [11]
 
 Justice Pomeroy was similarly cognizant of the distinctions between a statutory and common law cause of action and noted:
 

 Were the defendant-appellee in this case a licensee under the Liquor Code and had sold the drinks rather than given them away to a person visibly intoxicated, there is little doubt that we would conclude that a cause of action had been stated; such conduct, in clear violation of the provisions of Section 493 of the Liquor Code, would be considered negligence per se in a civil suit, even though the statute is penal in nature.... I hasten to add that in my view there is no reason in the nature of things why a private person should not be held liable if he serves liquor to one whom he knows or should know to be intoxicated, and who he knows or should know is about to drive an automobile or engage in some other activity involving the potentiality of harm to himself or to others, with resulting damage. No legislative enactment is required to accomplish that result; it is ordinary tort law.
 

 Id.,
 
 454 Pa. at 240-242, 310 A.2d at 76-77 (footnotes omitted from text) (concurring opinion by Pomeroy, J.)
 
 [12]
 

 
 *410
 
 The above remarks demonstrate the Supreme Court’s acknowledgment of the differences between a cause of action created by statute and a common law tort action pursuant to which a statutorily imposed duty may be enforced. More importantly, the Justices’ explanations make it clear that the Liquor Code does not create a private statutory cause of action. Rather, the Supreme Court has long deemed the Liquor Code to be a penal statute which contains a legislative standard of conduct for which civil liability may be imposed, by way of a common law tort action, upon a defendant who violates it.
 
 See Manning v. Andy, Matthews v. Konieczny, Majors v. Brodhead Hotel,
 
 and
 
 Jardine v. Upper Darby Lodge No. 1973, Inc., supra.
 
 The cases referenced by appellant thus do not support the proposition that a private statutory cause of action has been recognized under the Liquor Code.
 

 Having discussed Pennsylvania law and found that it strengthens rather than negates our conclusions regarding the non-existence of a statutory cause of action under the Liquor Code, we must next consider the law of other jurisdictions.
 
 [13]
 
 
 *411
 
 Several of our sister states have expressly or implicitly provided a private statutory cause of action to distributors or wholesalers who have an existing relationship with a manufacturer/supplier.
 
 See, e.g.,
 
 17 Florida Statutes Annotated § 563.022(18)(c) (West 1994 Supp.) (any person who shall be aggrieved or injured in his business or property may bring an action therefor in the appropriate circuit court of this state); 28-A Maine Revised Statutes Annotated § 1458 (West 1988) (wholesale licensee may maintain suit against a certificate of approval holder who unreasonably withholds consent to any assignment, transfer or sale of the wholesaler’s business); 20B Minnesota Statutes Annotated § 325B.08 (West 1981) (permitting a wholesaler to maintain suit against a brewer who unreasonably withholds consent to an assignment, sale or transfer of the wholesaler’s business); 5 North Carolina General Statutes § 18B-1207(a) (permitting a wholesaler to maintain suit against a winery which unreasonably withholds consent to any transfer of the wholesaler’s business) and § 18B-1307(c) (1989) (making a beer supplier who disapproves or prevents a proposed assignment or change of ownership of a beer wholesale business liable to the wholesaler); 13 Ohio Revised Code Annotated § 1333.87 (Baldwin 1993-1994 Supp.) (directing that a manufacturer or distributor, who directly or through an officer, employee or agent violates the provisions of the act is liable to the party injured for all reasonable damages resulting from the violation; an action to recover such damages and other relief may be brought in the common pleas court).
 
 See also
 
 56 New Jersey Statutes Annotated § 56:10-10 (West 1989) (granting franchisees the right to sue franchisors for any violation of the Franchise Practices Act).
 
 [14]
 
 
 *412
 
 Comparison of similar statutes in other jurisdictions thus reveals that they explicitly accord a distributor/wholesaler/franchisee the right to maintain suit against a manufacturer/supplier/franchisor who unreasonably withholds his consent to the assignment, sale, transfer or other disposition of the distributor/wholesaler/franchisee’s business. Unlike these statutes, however, neither § 4-492(20) nor any other provision of the Pennsylvania Liquor Code expressly grants a distributor the right to institute suit against and recover damages from a manufacturer who unreasonably interferes with or prevents the distributor from disposing of his distribution rights. Because the absence of such a provision in Pennsylvania’s Liquor Code is a feature which markedly distinguishes it from similar enactments in other states, examination of foreign law, to the extent it is at all useful, intimates that § 4-492(20) should not be construed as giving rise to a private statutory cause of action.
 

 Appellant further challenges the trial court’s determination that appellant lacked standing to pursue this action. To have standing to entertain suit, a party must be aggrieved and must have a direct interest in the matter.
 
 Application of El Rancho Grande, Inc.,
 
 496 Pa. 496, 503, 437 A.2d 1150, 1153 (1981).
 

 The core concept, of course, is that a person who is not adversely affected in any way by the matter he seeks to challenge is not aggrieved thereby and has no standing to obtain a judicial resolution of his challenge. In particular, it
 
 *413
 
 is not sufficient for the person claiming to be aggrieved to assert the common interest of all citizens in procuring obedience to the law. Moreover, the relationship between the challenged action and the asserted injury must be direct and immediate, not a remote consequence.
 

 Id.
 
 (citations and quotation marks omitted).
 

 In this instance, appellant arguably established that it was aggrieved by Latrobe’s conduct and that the injury resulting therefrom was direct and immediate. Appellant consequently had standing to maintain suit against Latrobe. However, the question of whether appellant had standing to generally institute suit against Latrobe for any wrongs it committed was never at issue here. Instead, the only matter to be addressed was whether appellant, as a proposed purchaser of Weilersbacher’s distribution rights, had standing to maintain a private statutory cause of action under § 4 — 492(20)(i) of the Liquor Code and the trial court confined its ruling to this narrow inquiry.
 
 See
 
 Trial Court Opinion, dated December 21,1993, at 3-5. In light of our previous discussion and conclusion that § 4-492(20) does not explicitly or implicitly give rise to any private statutory cause of action for damages thereunder, it follows that prospective purchasers do not have standing to maintain such an action against a manufacturer pursuant to this provision.
 

 As the trial court correctly determined that appellant cannot assert a statutory civil cause of action under § 4-492(20) against Latrobe, and since appellant did not plead any other cause of action for which liability could be imposed, it is clear that Latrobe was entitled to judgment in its favor as a matter of law. Under these circumstances, the trial court properly granted Latrobe’s motion for judgment notwithstanding the verdict. We therefore affirm.
 
 [15]
 

 Judgment affirmed.
 

 [1]
 

 . The parties indicate that these appeals are from the order of the trial court which granted appellee’s motion for judgment notwithstanding the verdict, but otherwise denied the parties’ post-trial motions. The parties are in error, since an appeal from an order dismissing post-trial motions is interlocutory and unappealable. Pa.R.A.P., Rule 301, 42
 
 *394
 
 Pa.C.S.A. and note thereto. Rather, the appeal in this case lies from the entry of final judgment in favor of appellee.
 
 Id.
 
 We will disregard this defect because it is clear that these appeals are properly before this court and because the parties’ mischaracterization does not affect our ability to engage in effective and meaningful review. Pa.R.A.P., Rule 105(a), 42 Pa.C.S.A.
 

 [2]
 

 . Latrobe Brewing Company is a wholly-owned subsidiary of John Labatt, Inc. Although not apparent from the record, it appears that Labatt Importers, Inc. (Labatt) is an entity which has some corporate relationship with John Labatt, Inc. Labatt’s status need not be definitively resolved, since the trial court granted Labatt’s motion for a compulsory nonsuit and this ruling has not been pursued on appeal.
 

 [3]
 

 . Straub does not appear to have revoked its approval, as it continued to express its preference that Lutheran acquire Weilersbacher’s distribution rights.
 

 [4]
 

 . As previously mentioned, the trial court granted Labatt’s motion for a compulsory nonsuit and this ruling has not been further challenged by Lutheran. Accordingly, Labatt is not a participant in this appeal.
 

 [5]
 

 . The remainder of the statute,
 
 i.e.,
 
 subsection (20)(ii) relates to the proposed transfer of the distributor or importing distributor’s business to a surviving spouse or adult child. Because the proposed transfer in this case did not involve a relationship of this type, this portion of the statute is not relevant to our discussion.
 

 [6]
 

 . Appellant asserts that 1 Pa.C.S.A. § 1929 was intended to circumvent application of the test enunciated in
 
 Cort v. Ash,
 
 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) and that it creates a civil statutory cause of 'action, even absent a specific statute authorizing such actions. Section 1929 is set forth as follows:
 

 The provision in any statute for a penalty or forfeiture for its violation shall not be construed to deprive an injured person of the right to recover from the offender damages sustained by reason of the violation of the statute.
 

 1 Pa.C.S.A. § 1929. To construe this provision in the manner suggested by appellant would render superfluous all of the statutes enacted by the General Assembly which specifically grant aggrieved persons the right to maintain actions for a violation thereof. Moreover, appellant’s interpretation would lead to unreasonable and absurd results. We must therefore search for a more rational construction which is consistent with the legislature’s intent.
 

 Contrary to appellant’s assessment, § 1929 does not suggest that the General Assembly intended this provision to give rise to new statutory causes of action or prohibit a
 
 Cort v.
 
 Ash-type of analysis. In construing § 1929, it is evident that the General Assembly did nothing more than express its recognition of an injured person’s right to recover damages from an offender who violates a penal statute. In other words, the existence of a criminal statute and the penalties which may be imposed for a violation thereof does not preclude an injured person from instituting a civil action which is authorized by law to recover damages.
 
 See
 
 18 Pa.C.S.A. § 107(c) (this section does not bar, suspend or otherwise affect any right of liability to damages, penalty, forfeiture or other remedy authorized by law to be recovered or enforced in a civil action, regardless of whether the conduct involved in such civil action or matter constitutes an offense). Section 1929 thus contemplates that an injured party may enforce whatever remedies he or she may have either by way of a statutorily authorized civil action or a common law action even though the conduct involved in the action is defined as a criminal offense. This statute does not, however, create a statutory or common law cause of action which the law heretofore has not recognized.
 

 
 *399
 
 As applied here, § 1929 allows appellant to recover damages from Latrobe in a civil action authorized by law even though the Liquor Code is a penal statute which primarily imposes criminal sanctions upon the offender in the event of a violation. But § 1929 does not answer the more fundamental question of whether § 4-492(20) authorizes maintenance of a private cause of action by appellant. We must therefore first determine whether the
 
 Cort
 
 v.
 
 Ash
 
 factors have been met,
 
 i.e.,
 
 whether appellant has the right to maintain a private statutory cause of action, before we can decide the scope of the remedies to which appellant may be entitled.
 

 [7]
 

 . The parties reference legislative history of the Senate regarding the intent of the legislature in enacting this provision. Having reviewed the senators’ comments, it is apparent that they relate to a proposed amendment to § 4-492(19) rather than to § 4-492(20). Although the comments offer little guidance as to the class of individuals which subsection (20) was designed to protect, they do suggest that the legislature was more concerned with equalizing the rights of the distributor or importing distributor with whom the manufacturer had a relationship rather than with the rights of a prospective purchaser.
 
 See
 
 Legislative Journal of the Senate, Vol. 2, No. 36 at 1742 (June 3, 1980) (in which Senator Kelley stated, in response to Senator Coppersmith's proposed amendment and remarks in support thereof, that the text contained in subsection (19) is "truly the very important substance[] of the bill itself. It is the equalizer between the individual distributor, the importing distributor and the malt beverage manufacturer.’’) Senator Kelley further commented that the General Assembly was adopting the amendments to § 4-492 because of the "many, many abuses in th[e] [malt and brewed beverage] industry....”
 
 Id.
 
 The fact that the General Assembly was concerned with rectifying perceived abuses in the malt and brewed beverage trade should not, as suggested by appellant, be interpreted as an indication that the General Assembly was concerned with protecting the rights of prospective purchasers. Rather, when Senator Kelley's statement is construed in conjunction with the express language of the statute as it was enacted, it appears that the General Assembly was primarily concerned with regulating an extant business relationship between a manufacturer and distributor or importing distributor.
 

 [8]
 

 . Appellant and the
 
 amici curiae
 
 raise various policy considerations which purportedly militate in favor of implying a private statutory cause of action under § 4-492(20). Policy considerations regarding the recognition of a new statutory cause of action are more appropriately directed to the General Assembly or our Supreme Court, as it is not the prerogative of an intermediate appellate court to enunciate new precepts of law or expand existing legal doctrines.
 
 Commonwealth v. Smith,
 
 404 Pa.Super. 553, 559, 591 A.2d 730, 733 (1991),
 
 reversed on other grounds,
 
 532 Pa. 177, 615 A.2d 321 (1992);
 
 Malinder v. Jenkins
 
 
 *406
 

 Elevator & Machine Co.,
 
 371 Pa.Super. 414, 421, 538 A.2d 509, 513 (1988)
 
 (en
 
 banc). Despite the pleas of appellant and the
 
 amici
 
 as to the policy considerations and the evils which will occur absent judicial recognition of a statutory cause of action, there are countervailing reasons which suggest that a private statutory’ cause of action should not be implied. Moreover, neither appellant nor the
 
 amici
 
 attempt to explain why their rights and the purposes of the statute cannot be adequately protected and/or promoted either by an administrative proceeding to enforce the statute or by an ordinary common law action. In the absence of such argument, we are unable to conclude that implication of a private statutory cause of action is the only means by which appellant and other proposed purchasers can be protected.
 

 [9]
 

 .
 
 See, e.g., McKeesport Beer v. All Brand Importers,
 
 530 Pa. 250, 608 A.2d 485 (1992);
 
 Tony Savatt, Inc. v. Latrobe Brewing Co.,
 
 400 Pa.Super. 296, 583 A.2d 796 (1990),
 
 allocatur denied,
 
 527 Pa. 668, 593 A.2d 843,
 
 cert. denied,
 
 502 U.S. 892, 112 S.Ct. 586, 116 L.Ed.2d 611 (1991);
 
 Rudolph Rosa, Inc. v. Latrobe Brewing Co.,
 
 347 Pa.Super. 551, 500 A.2d 1194 (1985);
 
 Matt Lamb & Sons, Inc. v. Christian Schmidt Brewing Co.,
 
 336 Pa.Super. 341, 485 A.2d 836 (1984).
 

 [10]
 

 .
 
 See, e.g., Matthews v. Konieczny,
 
 515 Pa. 106, 527 A.2d 508 (1987);
 
 Majors v. Brodhead Hotel,
 
 416 Pa. 265, 205 A.2d 873 (1965);
 
 Jardine v. Upper Darby Lodge No. 1973, Inc.,
 
 413 Pa. 626, 198 A.2d 550 (1964);
 
 Thomas v. Duquesne Light Co.,
 
 376 Pa.Super. 1, 545 A.2d 289 (1988),
 
 affirmed,
 
 528 Pa. 113, 595 A.2d 56 (1991);
 
 Connelly v. Ziegler,
 
 251 Pa.Super. 521, 380 A.2d 902 (1977).
 

 [11]
 

 . The majority in
 
 Manning v. Andy
 
 held that civil liability for a violation of § 4-493(1) cannot be imposed upon an individual who furnishes alcohol to another for no remuneration and who is not a licensee within the meaning of the Liquor Code.
 
 Id.,
 
 454 Pa. at 239, 310 A.2d at 76. The essence of the majority's holding is that the defendant could not be held liable as a matter of law, because the statute only imposed a duty upon licensees rather than on social hosts. Justice Manderino disagreed with the majority’s interpretation of § 4-493(1) and concluded that the statute did impose a duty upon the defendant since by its express terms it prohibited a licensee or any other person from furnishing or giving liquor to any person who was visibly intoxicated.
 
 Id.,
 
 454 Pa. at 246-248, 310 A.2d at 79-80.
 

 [12]
 

 . Justice Pomeroy’s comments indicate that he would have permitted the plaintiff to maintain an ordinary negligence action against the defendant.
 
 Id.
 
 Because the plaintiff's complaint failed to set forth a negligence action and only asserted a duty and breach thereof arising under § 4-493(1) of the Liquor Code, Justice Pomeroy concurred in the result reached by the majority as he agreed that § 4-493(1) did not
 
 *410
 
 impose civil liability upon a private individual who was not involved in the liquor industry.
 
 Id.
 

 [13]
 

 . The parties refer us to cases involving the transfer of distribution rights involving both alcoholic beverages and automobile dealerships. The decisions and statutes pertaining to automotive dealerships are irrelevant and need not be considered since Pennsylvania has its own statute governing the relationship between automotive manufacturers and dealers.
 
 See
 
 Board of Vehicles Act (BOVA), 63 P.S. § 818.1- § 818.28. The BOVA makes it unlawful for any manufacturer, factory branch or distributor to ''[unreasonably withhold consent to the sale, transfer or exchange of the franchise to a qualified buyer capable of being licensed as a new vehicle dealer in this Commonwealth.” 63 P.S. § 818.9(b)(3). In addition, the statute, specifically provides that
 

 any person who is or may be injured by a violation of a provision of this act or any party to a franchise who is so injured in his business or property by a violation of a provision of this act relating to that franchise, or any person so injured because he refuses to accede to a proposal for an arrangement which, if consummated, would be in violation of this act, may bring an action for damages and equitable relief, including injunctive relief, in any court of competent jurisdiction.
 

 63 P.S. § 818.20(a). Review of Pennsylvania’s automobile dealer statute thus reveals that the General Assembly was capable of expressly providing for a private statutory cause of action when it has chosen to do so. The absence of a similar provision in the Liquor Code compels
 
 *411
 
 us to conclude that the General Assembly did not intend to create a private statutory cause of action thereunder.
 

 [14]
 

 . Of the few courts which have had the opportunity to interpret and apply these statutes, it is significant that none have extended prospective purchasers the right to maintain a statutory cause of action against a manufacturer who refuses to consent to a transfer or sale of the distributor’s rights.
 
 See, e.g., Gans v. Miller Brewing Co.,
 
 560 So.2d 281, 282-283 (Fla.App. 4th Dist.),
 
 review denied,
 
 574 So.2d 140 (1990) (prospective purchaser of beer distribution rights does not have standing to maintain statutory cause of action against manufacturer who
 
 *412
 
 refuses to consent to transfer of distributing rights);
 
 Tynan v. General Motors Corp.,
 
 248 N.J.Super. 654, 666, 591 A.2d 1024, 1031 (App.Div.),
 
 cert. denied,
 
 127 N.J. 548, 606 A.2d 362 (1991),
 
 reversed on other grounds,
 
 127 N.J. 269, 604 A.2d 99 (1992) (prospective purchaser of automobile dealership does not have standing to maintain statutory cause of action under New Jersey Franchise Practices Act);
 
 Collins Wholesale Distributing Co. v. E & J Gallo Winery,
 
 867 F.2d 817, 819 (4th Cir.1989) (statutory cause of action under § 18B-1207 of the North Carolina Winery Act does not extend to a prospective purchaser of the wholesaler’s distributorship);
 
 Empire Distributors of North Carolina, Inc. v. Schieffelin & Co.,
 
 859 F.2d 1200, 1203-1204 (4th Cir.1988) (proposed transferee of wine distribution rights had no standing to challenge a winery’s allegedly unreasonable refusal to consent to a proposed transfer).
 

 [15]
 

 . In view of our resolution of the questions raised by appellant, it is unnecessary to address the issues raised by cross-appellant.